James A. McIntyre - 2196
J. David Milliner - 5762
McINTYRE & GOLDEN, L.C.
3838 So. West Temple
Salt Lake City, Utah 84115
Telephone: (801) 266-3399
Facsimile: (801) 263-1834

*Attorneys for David P. Johnson and E. Kathleen Johnson*

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| In re: | |
| TWIN PEAKS FINANCIAL SERVICES, INC., Debtor.<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT UNDER SECTION 523(a)(2) OF THE BANKRUPTCY CODE** |
| DAVID P. JOHNSON and E. KATHLEEN JOHNSON,<br>Plaintiffs,<br>v. | |
| | Bankruptcy No. 07-25399 (Chapter 11) |
| TWIN PEAKS FINANCIAL SERVICES, INC., CHAD R. PALMER, DOES 1 -10, et al.,<br>Defendants. | Adversary No. _____<br><br>Hon. Judith A. Boulden |

---

Plaintiffs David P. Johnson and E. Kathleen Johnson (the "Johnsons") complain against

Defendants Kenneth C. Tebbs ("Tebbs"), Chad R. Palmer ("Palmer"), Melissa A. Tebbs

("Melissa Tebbs"), Twin Peaks Financial Service, Inc. ("Twin Peaks"), MNK Investments, Inc.

("MNK") and Does 1-10 as follows:

### PARTIES, JURISDICTION AND VENUE

1.     This is a core proceeding over which the Court has jurisdiction under 28 U.S.C. §157(b).

2. The Johnsons are individuals who are, and at all relevant times were, residents of Midvale, Salt Lake County, Utah.

3. Tebbs is an individual who on information and belief is, and at all relevant times was, a resident of Salt Lake County, Utah.

4. Tebbs is the debtor in Chapter 7 case no. 08-20546 that is currently pending before the Court.

5. At all relevant times, Tebbs was President, director, at least 50% shareholder and the registered agent for both Twin Peaks and MNK.

6. At all relevant times Tebbs controlled Twin Peaks and MNK.

7. Palmer is an individual who on information and belief is, and at all relevant times was, a resident of Salt Lake County, Utah.

8. On information and belief, at all relevant times Palmer was Vice President, director and at least 50% shareholder of both Twin Peaks and MNK.

9. On information and belief, at all relevant times Palmer controlled Twin Peaks and MNK in concert with Tebbs.

10. Melissa Tebbs is, and at all relevant times was, the wife of Tebbs.

11. On information and belief, Melissa Tebbs is, and at all relevant times was, a resident of Salt Lake County, Utah.

12. Melissa Tebbs is the debtor in Chapter 7 case no. 08-22059 that is currently pending before the Court.

13. Twin Peaks is a Utah corporation, having been formed under the laws of the State of Utah by Tebbs and Palmer on or about December, 21 2006, and having its principal offices in Riverton, Salt Lake County, Utah.

14. Twin Peaks is the debtor in Chapter 11 case no. 07-25399 that is currently pending before the Court.

15. Twin Peaks is currently operating as a debtor in possession under new management.

16. On May 15, 2008, the U.S. Trustee filed a motion to either dismiss Twin Peak's bankruptcy case or convert it to a case under Chapter 7. A hearing on this motion is currently scheduled for June 16, 2008.

17. MNK is a Utah corporation, having been formed under the laws of the State of Utah by Tebbs and Palmer on or about February 21, 2007, and having its principal offices in Riverton, Salt Lake County, Utah.

18. MNK is the debtor in Chapter 11 case no. 07-25401 that is currently pending before the Court.

19. MNK is currently operating as a debtor in possession under new management.

20. On May 15, 2008, the U.S. Trustee filed a motion to either dismiss MNK's bankruptcy case or convert it to a case under Chapter 7. A hearing on this motion is currently scheduled for June 16, 2008.

21. On May 29, 2008, Twin Peaks and MNK both filed motions to consolidate their two bankruptcy cases. A hearing on this motion is also currently scheduled for June 16, 2008.

22. On information and belief, Does 1-10 are individuals and/or entities whose identities are currently unknown to Johnsons but who, because of their involvement in the acts and events complained of herein are liable to Johnsons, in whole or in part, for the damages they have sustained.

23. All of the events giving rise to the Johnsons' causes of action occurred within Salt Lake County, Utah.

24. Venue is proper in this Court.

25. The claims brought in this adversary proceeding are also the subject of that certain lawsuit entitled *David P. Johnson and E. Kathleen Johnson v. Kenneth C. Tebbs, et al.*, filed November 7, 2007 in the Third Judicial District Court in and for Salt Lake County, State of Utah, Salt Lake Division, Case No. 070915847 (the "State Court Case").

26. Proceedings on the claims brought in the State Court Case against Tebbs, Melissa Tebbs (as a Doe), Twin Peaks and MNK were, however, stayed by the orders for relief/automatic stays in their respective bankruptcy cases.

FIRST CAUSE OF ACTION: FRAUD (AGAINST TEBBS AND TWIN PEAKS):

Lots 7, 8 & 9 Bowden Estates

27. On or about August 13, 2007, Tebbs approached the Johnsons and solicited them to make a short-term loan of $700,000.00 to Twin Peaks.

28. To induce them to make this loan, Tebbs, and Twin Peaks through Tebbs, represented to Johnsons, among other things, that:

    a. Twin Peaks held fee simple title to certain real property located within the City of Sandy, Salt Lake County, Utah to wit:

       Lots 7, 8 and 9 of Bowden Estates Subdivision according to the official plat thereof as recorded in the office of the Salt Lake County, Recorder (the "Bowden Property");

    b. Their loan would be secured by a trust deed on the Bowden Property; and

    c. The trust deed would have first priority on the Bowden Property; *i.e.*, that it would be a first trust deed.

29. Unbeknownst to the Johnsons, Twin Peaks did not and does not hold fee simple title to the Bowden Property.

30.     Unbeknownst to the Johnsons, there was and is at least one prior and unsatisfied trust deed or mortgage on the Bowden Property in favor of a third party securing an amount which, on formation and belief, was and is equal to or in excess of the fair market value of the Bowden Property.

31.     In reliance upon Tebbs' and Twin Peaks' representations, the Johnsons made the loan to Twin Peaks.

32.     The Johnsons' loan to Twin Peaks is evidenced by a promissory note in the amount of $700,000.00 dated August 13, 2007 (the "August 13 Bowden Note"), which is executed by Tebbs as President of Twin Peaks.

33.     Contemporaneously with the August 13 Bowden Note, Tebbs, as President of Twin Peaks, also executed a Trust Deed (the "Original Bowden Trust Deed") on the entire Bowden Property in favor of Johnsons.  The Original Bowden Trust Deed references the fact that it is securing a $700,000.00 promissory note.

34.     As part of the transaction, the Johnsons requested, and Tebbs agreed, that Tebbs would handle the recording of the Original Bowden Trust Deed with the Salt Lake County Recorder.

35.     Instead of recording the Original Bowden Trust Deed, and unbeknownst to the Johnsons, Tebbs caused to be recorded a substitute trust deed (the "Substitute Bowden Trust Deed") which includes only lots 7 and 8 in its legal description and purports to secure a promissory note for only $500,000.00.

36.     Twin Peaks did not fully repay the debt represented by the August 13 Bowden Note when it came due on September 4, 2007.

37.     On or about September 11, 2007, Tebbs, and Twin Peaks through Tebbs, partially paid

the amount due under the August 13 Bowden Note and renegotiated with the Johnsons the payment of the balance.

38. To induce Johnsons to renegotiate the loan, Tebbs and Twin Peaks represented to them, among other things, that the renegotiated loan would continue to be secured by the Original Bowden Trust Deed.

39. In reliance upon Tebbs' and Twin Peaks' representations, the Johnsons renegotiated their loan to Twin Peaks.

40. This renegotiated loan is evidenced by a promissory note in the amount of $535,927.36 dated September 11, 2007 (the "September 11 Bowden Note") in favor of Johnsons and executed by Tebbs as President of Twin Peaks.

41. The August 13 Bowden Note, the Original Bowden Trust Deed, the Substitute Bowden Trust Deed and the September 11 Bowden Note were all either prepared by or under the direction of Tebbs.

42. Twin Peaks is in default under the September 11 Bowden Note in that it has not paid this note when it came due and has waived any presentment requirement.

43. The Johnsons incorporate by reference the preceding numbered paragraphs as though fully set forth herein.

44. As set forth above, Tebbs, and Twin Peaks through Tebbs, made representations to Johnsons that Twin Peaks held fee simple title to the Bowden Property, that the loan made by Johnsons to Twin Peaks would be secured by a first trust deed on the Bowden Property, and that the trust deed would cover the entire Bowden Property.

45. All of these representations were of presently existing material facts with respect to the loan from Johnsons to Twin Peaks.

46. At the time Tebbs and Twin Peaks made these representations to Johnsons, Tebbs and Twin Peaks either knew them to be false or made them recklessly knowing that they had insufficient knowledge upon which to base those representations.

47. Tebbs and Twin Peaks made those representations for the purpose of inducing Johnsons to make the loan to Twin Peaks.

48. The Johnsons were ignorant of the falsity of these representations and acted reasonably in making the loan to Twin Peaks in that Johnsons had entered into other similar transactions with Tebbs and Twin Peaks (and/or other companies controlled by Tebbs) in the past with which no problems had arisen.

49. In making the loan to Twin Peaks, Johnsons did, in fact, rely upon the above representations made by Tebbs and Twin Peaks.

50. The above representations by Tebbs and Twin Peaks did, in fact, induce Johnsons to make the loan to Twin Peaks.

51. Johnsons have been injured and damaged by Tebbs' and Twin Peaks' false representations in that the loan that they made to Twin Peaks has not been repaid and they do not have the collateral in the form of a valid trust deed on the Bowden Property which they can foreclose to recover their loan.

52. The Johnsons have suffered actual injury because of the fraud committed by Tebbs and Twin Peaks in the amount of at least $535,927.36 plus costs and attorney fees.

53. Tebbs and Twin Peaks committed fraud upon the Johnsons either intentionally or with reckless disregard for the Johnsons' rights, and on that basis should also be liable to Johnsons for punitive damages in an amount to be determined at trial.

54. Because it was procured by fraud, Johnsons are entitled to a judgment declaring that the

debt represented by the September 11 Bowden Note is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

SECOND CAUSE OF ACTION: FRAUD (AGAINST TEBBS AND TWIN PEAKS):

Lots 2 & 3 Westwind Circle Subdivision

55.     On or about August 14, 2007, Tebbs approached the Johnsons and requested that they make a short-term loan of $300,000.00 to Twin Peaks.

56.     To induce Johnsons to make this loan, Tebbs, and Twin Peaks through Tebbs, represented to them, among other things, that:

    a.      Twin Peaks held fee simple title to certain real property located within the City of Orem, Utah County, Utah to wit:

            Lots 2 and 3 of the Westwind Circle Subdivision according to the official plat thereof as recorded in the office of the Utah County, Recorder (the "Westwind Property");

    b.      Their loan would be secured by a trust deed on the Westwind Property; and

    c.      The trust deed would have first priority on the Westwind Property; *i.e.*, that it would be a first trust deed.

57.     Unbeknownst to the Johnsons, there was and is at least one prior and unsatisfied trust deed or mortgage on the Westwind Property in favor of a third party securing an amount which, on information and belief, was and is equal to or greater than the fair market value of the Westwind Property.

58.     In reliance upon Tebbs' and Twin Peaks' representations, the Johnsons made the loan to Twin Peaks.

59.     The Johnsons' loan to Twin Peaks is evidenced by a promissory note in the amount of $300,000.00 dated August 14, 2007 (the "August 14 Westwind Note"), which was

executed by Tebbs as President of Twin Peaks.

60. Contemporaneously with the August 14 Westwind Note, Tebbs, as President of Twin Peaks, also executed a Trust Deed on the Westwind Property (the "Westwind Trust Deed") in favor of Johnsons.

61. Twin Peaks did not repay the debt represented by the August 14 Westwind Note when it came due on September 4, 2007.

62. On or about September 11, 2007, Tebbs, and Twin Peaks through Tebbs, renegotiated with Johnsons the amount due under the August 14 Westwind Note.

63. To induce Johnsons to renegotiate the loan, Tebbs and Twin Peaks represented to them, among other things, that the renegotiated loan would continue to be secured by the Westwind Trust Deed.

64. In reliance upon Tebbs' and Twin Peaks' representations, the Johnsons renegotiated their loan to Twin Peaks.

65. This renegotiated loan is evidenced by a promissory note in the amount of $316,142.47 dated September 11, 2007 (the "September 11 Westwind Note") in favor of Johnsons and executed by Tebbs as President of Twin Peaks.

66. The August 14 Westwind Note, the Westwind Trust Deed, and the September 11 Westwind Note were all either prepared by or under the direction of Tebbs.

67. Twin Peaks is in default under the September 11 Westwind Note in that it has not paid this note when it came due and has waived any presentment requirement.

68. The Johnsons incorporate by reference the preceding numbered paragraphs as though fully set forth herein.

69. As set forth above, Tebbs and Twin Peaks, through Tebbs, represented to Johnsons that

the loan made by Johnsons to Twin Peaks would be secured by a first trust deed on the Westwind Property.

70. This representation was of a presently existing material fact with respect to the loan from Johnsons to Twin Peaks.

71. At the time Tebbs and Twin Peaks made this representation to Johnsons, Tebbs and Twin Peaks either knew it to be false or made it recklessly knowing that they had insufficient knowledge upon which to base that representation.

72. Tebbs and Twin Peaks made that representation for the purpose of inducing Johnsons to make the loan to Twin Peaks.

73. The Johnsons were ignorant of the falsity of that representation and acted reasonably in making the loan to Twin Peaks in that Johnsons had entered into other similar transactions with Tebbs and Twin Peaks (and/or other companies controlled by Tebbs) in the past with which no problems had arisen.

74. In making the loan to Twin Peaks, Johnsons did, in fact, rely upon the above representation made by Tebbs and Twin Peaks.

75. The above representation by Tebbs and Twin Peaks did, in fact, induce Johnsons to make the loan to Twin Peaks.

76. Johnsons have been injured and damaged by Tebbs' and Twin Peaks' false representation in that the loan that they made to Twin Peaks has not been repaid and they do not have the collateral in the form of first trust deed on the Westwind Property which they can foreclose to recover their loan.

77. The Johnsons have suffered actual injury because of the fraud committed by Tebbs and Twin Peaks in the amount of at least $316,142.47 plus costs and attorney fees.

78. Tebbs and Twin Peaks committed fraud upon the Johnsons either intentionally or with

reckless disregard for the Johnsons' rights, and on that basis should also be liable to Johnsons for punitive damages in an amount to be determined at trial.

79. Because it was procured by fraud, Johnsons are entitled to a judgment declaring that the debt represented by the September 11 Westwind Note is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

<u>THIRD CAUSE OF ACTION: FRAUD (AGAINST TEBBS AND MNK)</u>:

<u>Lots 129 & 134 of the Lakes at Sleepy Ridge</u>

80. On or about August 20, 2007, Tebbs approached the Johnsons and requested that they make a short-term loan of $548,912.39 to MNK.

81. To induce them to make this loan, Tebbs, and MNK through Tebbs, represented to Johnsons, among other things, that:

a. MNK held fee simple title to certain real property located within the City of Orem, Utah County, Utah to wit:

All of Lots 129 and 134 of Lakes at Sleepy Ridge Subdivision according to the official plat thereof as recorded in the office of the Utah County, Recorder (the "Sleepy Ridge Property");

b. Their loan would be secured by a trust deed on the Sleepy Ridge Property; and

c. That trust deed would have first priority on the Sleepy Ridge Property; *i.e.*, that it would be a first trust deed.

82. Unbeknownst to the Johnsons, there was and is at least one prior and unsatisfied trust deed or mortgage on the Sleepy Ridge Property in favor of a third party securing an amount that, on information and belief, was and is equal to or greater than the fair market value of the Sleepy Ridge Property.

83. In reliance upon Tebbs' and MNK's representations, the Johnsons made the loan to MNK.

84.   The Johnsons' loan to MNK is evidenced by a promissory note in the amount of $548,912.39 dated August 20, 2007 (the "Sleepy Ridge Note"), which was executed by Tebbs as President of MNK.

85.   Contemporaneously with the Sleepy Ridge Note, Tebbs, as President of MNK, also executed a Trust Deed on the Sleepy Ridge Property (the "Sleepy Ridge Trust Deed") in favor of Johnsons.

86.   MNK did not repay the debt represented by the Sleepy Ridge Note when it came due on September 25, 2007.

87.   MNK is in default under the Sleepy Ridge Note in that it has not paid this note when it came due and has waived any presentment requirement.

88.   The Johnsons incorporate by reference the preceding numbered paragraphs as though fully set forth herein.

89.   As set forth above, Tebbs and MNK, through Tebbs, made representations to Johnsons that the loan made by Johnsons to MNK would be secured by a first trust deed on the Sleepy Ridge Property.

90.   This representation was of a presently existing material fact with respect to the loan from Johnsons to MNK.

91.   At the time Tebbs and MNK made this representation to Johnsons, Tebbs and MNK either knew it to be false or made it recklessly knowing that they had insufficient knowledge upon which to base that representation.

92.   Tebbs and MNK made that representation for the purpose of inducing Johnsons to make the loan to MNK.

93.   The Johnsons were ignorant of the falsity of that representation and acted reasonably in making the loan to MNK in that Johnsons had entered into other similar transactions with

Tebbs and MNK (and/or other companies controlled by Tebbs) in the past with which no problems had arisen.

94. In making the loan to MNK, Johnsons did, in fact, rely upon the above representation made by Tebbs and MNK.

95. The above representation by Tebbs and MNK did, in fact, induce Johnsons to make the loan to MNK.

96. Johnsons have been injured and damaged by Tebbs' and MNK's false representation in that the loan that they made to MNK has not been repaid and they do not have the collateral in the form of a first trust deed on the Sleepy Ridge Property which they can foreclose to recover their loan.

97. The Johnsons have suffered actual injury because of the fraud committed by Tebbs and MNK in the amount of at least $548,912.39 plus costs and attorney fees.

98. Tebbs and MNK committed fraud upon the Johnsons either intentionally or with reckless disregard for the Johnsons' rights, and on that basis should also be liable to Johnsons for punitive damages in an amount to be determined at trial.

99. Because it was procured by fraud, Johnsons are also entitled to a judgment declaring that the debt represented by the Sleepy Ridge Note is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

<u>FOURTH CAUSE OF ACTION: FRAUD (AGAINST TEBBS AND TWIN PEAKS)</u>:

<u>Lot 241 Heritage Place Estates</u>

100. On or about August 28, 2007, Tebbs approached the Johnsons and requested that they make a short-term loan of $250,000.00 to Twin Peaks.

101. To induce Johnsons to make this loan, Tebbs represented to them, among other things, that:

a. Twin Peaks held fee simple title to a certain parcel of real property located within the City of Herriman, Salt Lake County, Utah to wit:

Lot 241 Heritage Place Estates Subdivision Phase 2 according to the official plat thereof as recorded in the office of the Salt Lake County, Recorder (the "Heritage Property");

b. The loan would be secured by a trust deed on the Heritage Property; and

c. The trust deed would have first priority on the Heritage Property; *i.e.*, that it would be a first trust deed.

102. Unbeknownst to the Johnsons, there was and is at least one prior and unsatisfied trust deed or mortgage on the Heritage Property in favor of a third party securing an amount that, on information and belief, was and is equal to or greater than the fair market value of the Heritage Property.

103. In reliance upon Tebbs' representations, the Johnsons made the loan to Twin Peaks.

104. The Johnsons' loan to Twin Peaks is evidenced by a promissory note in the amount of $250,000.00 dated August 28, 2007 (the "August 28 Heritage Note"), which was executed by Tebbs as President of Twin Peaks.

105. Contemporaneously with the August 28 Heritage Note, Tebbs, as President of Twin Peaks, also executed a Trust Deed on the Heritage Property (the "Heritage Trust Deed") in favor of Johnsons.

106. Twin Peaks did not repay the debt represented by the August 28 Heritage Note when it came due on September 4, 2007.

107. On or about September 11, 2007, Tebbs and Twin Peaks, through Tebbs, renegotiated with Johnsons the amount due under the August 28 Heritage Note.

108. To induce Johnsons to renegotiate the loan, Tebbs and Twin Peaks represented to them, among other things, that the renegotiated loan would continue to be secured by the

Heritage Trust Deed.

109.  In reliance upon Tebbs' and Twin Peaks' representations, the Johnsons renegotiated their loan to Twin Peaks.

110.  This renegotiated loan is evidenced by a promissory note in the amount of $261,476.02 dated September 11, 2007 (the "September 11 Heritage Note") in favor of Johnsons and executed by Tebbs as President of Twin Peaks.

111.  The August 28 Heritage Note, the Heritage Trust Deed, and the September 11 Heritage Note were all either prepared by or under the direction of Tebbs.

112.  Twin Peaks is in default under the September 11 Heritage Note in that it has not paid this note when it came due and has waived any presentment requirement.

113.  The Johnsons incorporate by reference the preceding numbered paragraphs as though fully set forth herein.

114.  As set forth above, Tebbs and Twin Peaks, through Tebbs, made representations to Johnsons that the loan made by Johnsons to Twin Peaks would be secured by a first trust deed on the Heritage Property.

115.  This representation was of a presently existing material fact with respect to the loan from Johnsons to Twin Peaks.

116.  At the time Tebbs and Twin Peaks made this representation to Johnsons, Tebbs and Twin Peaks either knew it to be false or made it recklessly knowing that they had insufficient knowledge upon which to base that representation.

117.  Tebbs and Twin Peaks made that representation for the purpose of inducing Johnsons to make the loan to Twin Peaks.

118.  The Johnsons were ignorant of the falsity of that representation and acted reasonably in making the loan to Twin Peaks in that Johnsons had entered into other similar

transactions with Tebbs and Twin Peaks (and/or other companies controlled by Tebbs) in the past with which no problems had arisen.

119. In making the loan to Twin Peaks, Johnsons did, in fact, rely upon the above representation made by Tebbs and Twin Peaks.

120. The above representation by Tebbs and Twin Peaks did, in fact, induce Johnsons to make the loan to Twin Peaks.

121. Johnsons have been injured and damaged by Tebbs' and Twin Peaks' false representation in that the loan that they made to Twin Peaks has not been repaid and they do not have the collateral in the form of a first trust deed on the Heritage Property which they can foreclose to recover their loan.

122. The Johnsons have suffered actual injury because of the fraud committed by Tebbs and Twin Peaks in the amount of at least $261,476.02 plus costs and attorney fees.

123. Tebbs and Twin Peaks committed fraud upon the Johnsons either intentionally or with reckless disregard for the Johnsons' rights, and on that basis should also be liable to Johnsons for punitive damages in an amount to be determined at trial.

124. Because it was procured by fraud, Johnsons are also entitled to a judgment declaring that the debt represented by the September 11 Heritage Note is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

## FIFTH CAUSE OF ACTION: CONSPIRACY TO COMMIT FRAUD: (AGAINST TEBBS, PALMER, MELISSA TEBBS, TWIN PEAKS, MNK AND DOES 1-10):

125. The Johnsons incorporate by reference the preceding numbered paragraphs as though fully set forth herein.

126. At all relevant times, Tebbs, either alone or in concert with Palmer, controlled Twin Peaks and MNK.

127. On information and belief, at all relevant times Palmer controlled Twin Peaks and MNK

in concert with Tebbs.

128. Tebbs employed Twin Peaks and MNK for the improper purposes of adding credibility to fraudulent schemes and attempting to shield himself from personal liability for his fraudulent actions pursuant thereto.

129. On information and belief, Palmer employed Twin Peaks and MNK for the improper purposes of adding credibility to fraudulent schemes and attempting to shield himself from personal liability for his fraudulent actions pursuant thereto.

130. Tebbs and Palmer also failed to properly observe corporate formalities and to otherwise operate Twin Peaks and MNK such that they should benefit in any way from the corporate shield from personal liability.

131. Sometime prior to August 13, 2007, two or more of Tebbs, Palmer, Melissa Tebbs, Twin Peaks, MNK and Does 1-10 (the "Conspirators") knowingly combined and agreed to act in concert.

132. The objective of the Conspirators' agreement and combination was to convince "investors," such as the Johnsons, to "invest" moneys in Twin Peaks and MNK under false pretenses, from which "investments" the Conspirators would benefit financially.

133. The Conspirators had a meeting of the minds when they agreed to combine to accomplish this objective.

134. In furtherance of their conspiracy, among other things, Twin Peaks and MNK employed the services of Tebbs, and, on information and belief, of Palmer, Melissa Tebbs and Does 1-10 to conduct and commit fraudulent activities on their behalf in exchange for financial benefits.

135. In furtherance of their conspiracy, among other things, Tebbs either knowingly or recklessly made materially false statements and representations to Johnsons to cause them

to "invest" monies with Twin Peaks and MNK.

136. On information and belief, in furtherance of their conspiracy, Palmer, among other things, acted to add an air of legitimacy to, and/or to otherwise conceal, the fraudulent nature of the representations and transactions that were being made and entered into by Tebbs, Twin Peaks and MNK.

137. On information and belief, in furtherance of their conspiracy, Melissa Tebbs, among other things, solicited or otherwise arranged one or more meetings between Tebbs and potential "investors" and acted to add an air of legitimacy to, and/or to otherwise conceal the fraudulent nature of the representations and transactions that were being made and entered into by Tebbs, Twin Peaks and MNK.

138. On information and belief, in furtherance of their conspiracy, Does 1-10, among other things, acted to add an air of legitimacy to, and/or to otherwise conceal, the fraudulent nature of the representations and transactions that were being made and entered into by Tebbs, Twin Peaks and MNK.

139. As a proximate result of the Conspirators' conspiracy, the Johnsons were damaged in the amount of at least $1,662,458.24 plus costs and attorney fees.

140. The Conspirators are jointly and severally liable for the damages suffered by the Johnsons as a result of their conspiracy.

141. The Johnsons are entitled to a joint and several judgment against the Conspirators in the amount of at least $1,662,458.24 plus costs and attorney fees.

142. Because the Conspirators acted either knowingly or with reckless disregard for the rights of Johnsons, Johnsons are also entitled to an award of punitive damages in an amount to be determined at trial.

143. The Johnsons are also entitled to a declaratory judgment that, because this debt was

incurred by means of the fraud of the Conspirators, it is nondischargeable by any of the Conspirators under Section 523(a)(2) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, the Johnsons pray the Court for the following relief:

A. Under their First Cause of Action a judgment against Tebbs and Twin Peaks, jointly and severally, for fraud in the amount of at least $535,927.36, plus punitive damages in an amount to be determined at trial, plus reasonable costs and attorney fees, and a declaratory judgment that this debt is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

B. Under their Second Cause of Action, a judgment against Tebbs and Twin Peaks, jointly and severally, for fraud in at least the amount of $316,142.47, plus punitive damages in an amount to be determined at trial, plus reasonable costs and attorney fees, and a declaratory judgment that this debt is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

C. Under their Third Cause of Action, a judgment against Tebbs and MNK, jointly and severally, for fraud in at least the amount of $548,912.39, plus punitive damages in an amount to be determined at trial, plus reasonable costs and attorney fees, and a declaratory judgment that this debt is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

D. Under their Fourth Cause of Action, a judgment against Twin Peaks and Tebbs, jointly and severally, for fraud in the amount of at least $261,476.02, plus punitive damages in an amount to be determined at trial, plus reasonable costs and attorney fees, and a declaratory judgment that this debt is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

E. Under their Fifth Cause of Action, a judgment against Tebbs, Palmer, Melissa Tebbs, Twin Peaks, MNK and Does 1-10, jointly and severally, for fraud and conspiracy to commit fraud in the amount of at least $1,662,458.24, plus punitive damages in an amount to be determined at trial, plus reasonable costs and attorney fees, and a declaratory judgment that this debt is nondischargeable under Section 523(a)(2) of the Bankruptcy Code.

F. For such other and further relief as the Court deems appropriate under the circumstances.

DATED this 9th day of June, 2008.

McINTYRE & GOLDEN, L.C.


  /s/        J. David Milliner
James A. McIntyre
J. David Milliner,
*Attorneys for David and Kathleen Johnson*

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June, 2008, I caused to be mailed via U.S. mail,

first-class postage prepaid, a true and correct copy of the foregoing COMPLAINT TO

DETERMINE NONDISCHARGEABILITY OF DEBT UNDER SECTION 523(a)(2) OF THE

BANKRUPTCY CODE to the following:


Peter W. Billings, Esq.
Gary E. Jubber, Esq.
Douglas J. Payne, Esq.
FABIAN & CLENDENIN
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
*Attorneys for Twin Peaks and MNK.*

Paul James Toscano, Esq.
10 Exchange Place, Suite 614
Salt Lake City, Utah 84111
*Attorney for Kenneth C. Tebbs and Melissa A. Tebbs*

Elizabeth R. Loveridge, Esq.
WOODBURY & KESSLER
265 East 100 South, Suite 300
P.O. Box 335
Salt Lake City, Utah 84110-3358
*Trustee for Kenneth C. Tebbs and Melissa A. Tebbs*

Laurie A. Clayton, Esq.
U.S. TRUSTEE'S OFFICE
300 Ken Garff Building
405 South Main Street
Salt Lake City, Utah 84111


                                              /s/  J. David Milliner